UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| CENTRAL KANSAS CANCER INSTITUTE, P.A. and RUSSELL L. REITZ, M.D.<br><br>Plaintiffs,<br><br>v.<br><br>SYLVIA MATHEWS BURWELL, SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>Trial Date:   None Set |

## JURISDICTION

1.  Plaintiffs hereby petition the Court for review of the Final Decisions of the Department of Health and Human Services Departmental Appeals Board – Appellate Division, Docket Nos. A-16-75 and A-16-76, Decision Nos. 2748 and 2749 entered on November 14, 2016 upholding a private Medicare contractor's retroactive termination of plaintiffs' Medicare enrollment.  Judicial review of these decisions is expressly authorized pursuant to 42 U.S.C. §§ 1395cc(h)(1)(A), (j)(2), and 405(g).  Plaintiffs have exhausted all available administrative remedies to challenge the Medicare contractor's decision thus giving this Court jurisdiction to review the actions at issue.  The Court reviews the decisions pursuant to 5 U.S.C. § 706.

## THE PARTIES

2.  During all relevant times, plaintiff Russell Reitz, M.D. ("Dr. Reitz") was a Kansas physician who specialized in the practice of radiation oncology at his medical clinic, a separate

1221460.1

professional corporation doing business as plaintiff Central Kansas Cancer Institute, P.A. ("CKCI"). During all relevant periods, Dr. Reitz and CKCI were separately certified by the Medical Program to furnish healthcare services to Medicare beneficiaries requiring radiation oncology and related services.

3. Sylvia Mathews Burwell ("Secretary") is the current Secretary of Health and Human Services, the federal agency charged with administering the Medicare Program, the federal health insurance program for the aged and disabled, 42 U.S.C. § 1395 et seq. The Secretary has delegated the day-to-day administration of the Medicare Program to the Centers for Medicare and Medicaid Services ("CMS"), a governmental agency. CMS, in turn, contracts with private insurers, such as Wisconsin Physicians Service Insurance Corporation ("WPS"), to perform certain Medicare payment functions and "other functions" as necessary to carry out the purposes of the Medicare Program. 42 U.S.C. §§ 1395u(a) and 1395kk-1(a).

## OVERVIEW OF THE APPLICABLE MEDICARE PRINCIPLES

4. CMS enrolls (a) Medicare "providers," (such as hospitals and skilled nursing facilities) to furnish services to Medicare beneficiaries under Part A of the Medicare Program, and (b) "suppliers," (such as clinical laboratories) and physicians to furnish services to Medicare beneficiaries under Part B of the Medicare Program. The enrollment process is a credentialing process used to assure that those entities and persons who furnish services to Medicare patients are qualified to do so. *See* 42 U.S.C. § 1395cc(a) regarding the enrollment of Part A providers and 42 U.S.C. § 1395u(h) regarding the enrollment of Part B suppliers and physicians. CMS uses Medicare contractors to process enrollment applications and information under Parts A and B of the Medicare Program. Additional enrollment provisions are authorized under 42 U.S.C § 1395cc(j).

5. Under Section 1395cc(b)(2)(D), the "Secretary may" terminate the Medicare enrollment of a provider if the provider has been convicted of a felony, which the Secretary determines is detrimental to the best interests of the program and to its beneficiaries. Similarly, under Section 1395u(h)(8), the "Secretary may" terminate the enrollment of a physician if the physician is convicted of a similar type of felony. In short, these provisions provide the Secretary with discretionary authority to impose the administrative agency sanction of terminating the Medicare enrollment privileges of a provider, supplier, or doctor who is convicted of certain felonies.

6. Neither statute, however, expressly permits this sanction, the termination of enrollment, to be imposed on a retroactive basis. Rather, under 42 U.S.C. § 1395cc(b)(3), the termination of a provider's enrollment must be effective on the same date an exclusion of a provider, supplier, or physician would be effective under Section 1320a-7(c). Such exclusions are imposed on a *prospective* basis. They do not become effective retroactively to the date of the event giving rise to the exclusion. Moreover, neither of the enrollment statutes gives the Secretary the authority to impose a derivative sanction – *i.e.,* to sanction an entity based on the conviction of its owner or employee.

7. The Secretary's regulations purporting to implement these Congressional mandates exceed the authority expressed in the statutes. For example, 42 C.F.R § 424.535(g), which characterizes the termination of Medicare enrollment as the revocation of Medicare "billing privileges," requires the termination of Medicare enrollment to be retroactively effective from the date of the felony conviction. Thus, if, as here, the felony conviction occurred in April 2009, a July 2015 decision of a Medicare contractor terminating Medicare privileges would be effective more than six years earlier. The same regulations impose derivative liability, meaning

1221460.1

that the enrollment of a clinic or other separately enrolled entity must be terminated if its owner or managing employee is convicted of a felony. 42 C.F.R § 424.535(a)(3)(i). And, this derivative termination must also be imposed retroactively under the Secretary's regulations. (The regulations also allow the termination of enrollment for the failure to report a felony conviction to the Medicare contractor within 30 days of a conviction. 42 C.F.R. § 424.535(a)(9).) Under 42 C.F.R. § 424.535(c)(1), CMS may prohibit a convicted physician (or provider or supplier) from reapplying for reenrollment in Medicare for up to three years and for up to ten years for a second conviction.

8. Additionally, even though the statutes speak of the Secretary's discretionary authority ("the Secretary may terminate") to terminate the enrollment of a convicted physician and the regulations discuss CMS' discretionary authority to do so (42 C.F.R § 424.535(a)), in practice the Secretary uses private Medicare contractors to exercise the threshold discretionary authority of deciding whether or not to terminate the enrollment of Medicare providers, suppliers, and physicians. And, while such private contractors' discretionary decisions are subject to administrative review by a separate body, the Departmental Appeals Board ("DAB"), the DAB has concluded that it must uphold a contractor's termination decision if it is based on a felony conviction of the type specified in the regulations at 42 C.F.R § Section 424.535(a)(3)(ii). As a result, the contractor's discretionary choice of whether to terminate enrollment in a particular case is essentially unreviewable by the Secretary. As discussed below, here this unchecked exercise of discretion by a private contractor is essentially egregious because the Medicare contractor did not choose to terminate CKCI's or Dr. Reitz's enrollment privileges when Dr. Reitz first reported the felony conviction to the contractor in June 2011, but did, in fact, choose to impose the termination sanction, together with a three-year prospective debarment

1221460.1

sanction when Dr. Reitz reported the 2009 felony conviction again in April 2015. And the DAB upheld the private contractor's obviously inconsistent discretionary choices.

## THE FACTS

9. On April 30, 2009, a Kansas State Court convicted Dr. Reitz of aggravated felony battery as a result of an altercation between Dr. Reitz and a man who was having a relationship with his ex-wife while Dr. Reitz was attempting to reconcile with his ex-wife. A jury found Dr. Reitz guilty of aggravated felony batter. The state court imposed but suspended a 12-month prison sentence and terminated Dr. Reitz's three-year probation early on September 10, 2010 due to his diligent efforts to comply with the terms of probation and because the judge wanted Dr. Reitz to be able to continue his medical practice so he could be "of benefit to society and the people of this community." The Kansas State Board of Healing Arts suspended Dr. Reitz's medical license but reinstated it on October 23, 2010 after receiving numerous letters from doctors and patients in the community about Dr. Reitz's character and abilities as a doctor.

10. In November 2009, the Medical Board reported its action against Dr. Reitz, and the basis for it, to the National Practitioner Data Bank, a national repository that Medicare contractors are supposed to use to verify Medicare enrollment information.

11. On June 14, *2011*, Dr. Reitz reported his felony conviction to WPS, the Medicare private contractor involved here, in connection with CKCI's continuing Medicare enrollment. Shortly thereafter, WPS approved CKCI's continuing enrollment in Medicare notwithstanding the conviction information reported earlier by Dr. Reitz.

12. In April *2015*, Dr. Reitz again reported his felony conviction to WPB as part of CKCI's enrollment in Medicare. This time, however, WPS, through separate notices dated July 22, *2015*, chose to terminate CKCI's and Dr. Reitz's Medicare enrollment effective April 30,

1221460.1

*2009*, the date of Dr. Reitz's felony conviction.  In the July 22, 2015 termination notices, WPS also identified Dr. Reitz's failure to report the conviction to WPS within 30 days of April 30, 2009.  The July 22, 2015 notices also barred Dr. Reitz and CKCI from applying for reenrollment for three years from the date of the notice.  In its July 22, 2015 notices of termination, WPS did not refer to Dr. Reitz's June 2011 disclosure of the felony conviction or to WPS' decision to continue CKCI's Medicare enrollment in July 2011.

14. On August 14, 2015, Dr. Reitz informed WPS that CKCI was terminating its business relationship with Dr. Reitz, hoping that such severing of the business relationship would allow CKCI to continue to operate despite Dr. Reitz' felony conviction.  Under 42 C.F.R. § 424.535(e), CMS may reverse the termination of enrollment if the enrollee ends its "business relationship" with the convicted party and submits proof of doing so within 30 days of being notified of the revocation of the billing privileges (the termination of enrollment).  While CKCI stopped paying Dr. Reitz and Dr. Reitz stopped working at CKCI prior to August 21, 2015, he was not able to actually disclose the sale of his ownership interests at CKCI to an outside party until September 16, 2015.

**THE ADMINISTRATIVE APPEAL PROCESS**

14. On September 1, 2015, Dr. Reitz and CKCI separately requested WPS to reconsider its July 22, 2015 termination decisions.  On September 10, 2015, WPS denied the reconsideration request because neither Dr. Reitz nor CKCI "provided evidence to show you fully compliance *[sic]* with the standards for which you were revoked."  WPS did not even address the efforts of CKCI to sever its business relationship with Dr. Reitz.

15. Dr. Reitz and CKCI timely appealed WPS' termination decisions to a DAB Administrative Law Judge ("ALJ"), who continued to treat the matters as separate appeals.  The

ALJ issued her decisions on the separate appeals on April 1, 2016 upholding WPS' decisions without affording Dr. Reitz and CKCI an in-person hearing and without giving Dr. Reitz the opportunity to examine the CMS employees who apparently dealt with the issue involving CKCI's termination of its business interests with Dr. Reitz.  The ALJ rejected all of the arguments asserted by Dr. Reitz and CKCI including their arguments that the termination sanctions were not authorized by the controlling Medicare statutes and were thus void notwithstanding WPS' reliance on regulations that allegedly supported such termination.  The ALJ also rejected CKCI's separate argument that the termination should have been reversed because CKCI had severed its business relationship with Dr. Reitz within 30 days of the issuance of WPS' termination notices.  In doing so, the ALJ rejected the argument that, without any rational basis for doing so, CMS acted arbitrarily and capriciously in refusing to reverse the terminations of enrollment here even though it had done so under circumstances similar to those here in another case.  And, the ALJ essentially found irrelevant WPS' July 2011 action of continuing CKCI's enrollment after the felony conviction had been reported to WPS in June 2011.  The ALJ also found no fault with WPS' inconsistent treatment of Dr. Reitz's disclosures of the felony conviction in 2011 and 2015.

16. Dr. Reitz and CKCI timely appealed the ALJ's decisions further to the appellate division of the DAB.  In addition to raising the same statutory arguments presented to the ALJ, they also raised the constitutional issue that neither Congress nor the Secretary is authorized to delegate discretionary regulatory authority to a private contractor, here WPS.  Thus, in their November 14, 2016 and November 16, 2016 decisions, the appellate division of the DAB affirmed the ALJ's sustaining of WPS' termination of enrollment decisions.

# COUNT I

## THE SANCTIONS IMPOSED ARE INVALID BECAUSE THEY ARE NOT AUTHORIZED BY THE CONTROLLING STATUTES

17. As discussed above, where a physician is convicted of a felony of the type here, Congress has given the Secretary discretion to terminate the physician's Medicare enrollment. However, such authority is limited to terminating the enrollment *prospectively*. There is no statutory authority allowing the Secretary to impose the termination sanction retroactively to an earlier date than the notice of the termination, including to the date of the felony conviction. Similarly, Congress has not authorized the Secretary to terminate the enrollment privileges of an entity owned by a physician who has been convicted of a felony when the entity, itself, has not been convicted. In violation of this statutory authority and assuming for argument purposes only that WPS may lawfully act for the Secretary, WPS exceeded its statutory authority (a) by terminating Dr. Reitz's Medical enrollment privileges on a retroactive basis, and (b) by terminating CKCI's enrollment privileges on a retroactive basis and by terminating CKCI based on the conviction of Dr. Reitz. The provisions of the Administrative Procedure Act, 5 U.S.C. § 558(b), as well as case precedent, establish that agency sanctions may not be imposed except with "jurisdiction delegated to the agency and as authorized by law."

# COUNT II

## WPS AND CMS ACTED ARBITRARILY AND CAPRICIOUSLY BY REFUSING TO REVERSE THE TERMINATION OF CKCI'S ENROLLMENT PRIVILEGES ONCE CKCI SEVERED ITS BUSINESS RELATIONSHIP WITH DR. REITZ

18. Under 42 C.F.R. § 424.535(e), CMS may reverse the termination of enrollment privileges when an enrolled entity terminates its business relationship with the owner or managing employee whose enrollment privileges are being terminated due to a felony conviction

so long as it provides CMS with proof of such termination within 30 days of the notice of the termination of the enrollment.  Here, CKCI furnished such evidence of its termination of its business relationship with Dr. Reitz within 30 days of the notice of the termination of CKCI's enrollment privileges.  However, CMS apparently found such action to be insufficient to trigger the reversal of the termination of CKCI's separate Medicare enrollment.  The fact that the agreement implementing a divestiture of Dr. Reitz's ownership interests in CKCI did not close until after the thirty-day period does not justify CMS' refusal to reverse the termination since under similar circumstances CMS reversed its termination decision for another similarly situated provider.

## COUNT III

### WPS ACTED ARBITRARILY AND CAPRICIOUSLY WHEN IT CHOSE TO TERMINATE CKCI'S AND DR. REITZ'S MEDICARE ENROLLMENT IN 2015 BUT DID NOT DO SO IN JULY 2011 BASED ON THE VERY SAME INFORMATION

19.     Assuming for argument purposes only that WPS possessed valid discretionary authority, it exercised such authority arbitrarily and capriciously when it chose to continue CKCI's Medicare enrollment in July 2011, after being informed of Dr. Reitz's felony conviction in June 2011, but chose to terminate CKCI's Medicare enrollment in July 2015 based on the very same information.  There was no rational basis for such inconsistent treatment.

## COUNT IV

### WPS' TERMINATION DECISIONS ARE VOID AND INVALID BECAUSE NEITHER CONGRESS NOR THE SECRETARY COULD CONSTITUTIONALLY DELEGATE DISCRETIONARY AUTHORITY OF THE TYPE HERE TO A PRIVATE CONTRACTOR

20.     Under the controlling Medicare statutes and regulations, the decision of whether to terminate a physician's enrollment in Medicare is discretionary.  Here, the discretionary

decision-making has been delegated to private Medicare contractors, in this case WPS. Neither Congress nor the Secretary has the constitutional authority to delegate regulatory discretionary authority to private contractors. Thus, WPS acted without authority and in violation of the Constitution when it chose to terminate the Medicare enrollment of Dr. Reitz and CKCI and the DAB may not uphold such improper exercise of discretion.

## COUNT V

## THE DEBARMENT DEPRIVES DR. REITZ AND CKCI OF DUE PROCESS OF THE LAW

21. The debarment of government contractors, including parties participating in the Medicare Program, triggers due process protections because such debarment affects the liberty interests (reputational interests) of such parties. This is especially true for doctors, whose reputations for honesty and integrity are integral to their continuing ability to practice their professions. Due process of the law prohibits the retroactive imposition of a debarment sanction. Here, WPS, a private contractor, has deprived Dr. Reitz and CKCI of due process of the law by retroactively debarring Dr. Reitz and CKCI from the Medicare Program.

## PRAYER FOR RELIEF

Based on the foregoing, plaintiffs request the court to order the following relief:

1. Void, vacate, and invalidate the termination of the Medicare disenrollment and other sanctions imposed on Dr. Reitz and CKCI;

2. Award Dr. Reitz and CKCI their costs of suit, including their reasonable attorney's fees in Court and in the previous administrative proceedings; and

3. Award Dr. Reitz and CKCI such other and further relief as the Court deems to be just and appropriate.

1221460.1

Dated:  January 9, 2017

    */s/ Mark A. Lynch*
Mark A. Lynch
KS Bar No. 14277
Attorney for Plaintiffs Central Kansas
Cancer Institute, P.A. and
Russell Reitz, M.D.
Simpson, Logback, Lynch, Norris, P.A.
7400 W. 110th Street, Suite 600
Overland Park, KS  66210
Telephone:  (913) 342-2500
Fax:  (785) 342-0603
E-mail:  mlynch@slln.com

1221460.1